UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NELLY ALLEN,

Plaintiff,

v.

MERRICK GARLAND, et al.,

Defendants.

Case No.  21-cv-09941-JCS

**ORDER RE MOTION TO DISMISS**

Re: Dkt. No. 37

## I.  INTRODUCTION

Pro se Plaintiff Nelly Allen filed this action for writ of mandamus to compel United States Citizenship and Immigration Services ("USCIS") to adjudicate her pending Form N-400 naturalization applications.  She named the following individuals as Defendants:  Attorney General Merrick Garland; Secretary of the Department of Homeland Security Alejandro Mayorkas; Acting Director of USCIS Tracy Renaud; and the director of USCIS's San Francisco office, Robin Barrett.  After Plaintiff filed her complaint, USCIS adjudicated and denied plaintiff's two pending requests for naturalization on November 9, 2022.  After USCIS's decision, Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the ground that the case is moot.  The matter is suitable for decision without oral argument.  *See* Civ. L.R. 7-1(b).  For the reasons below, Defendants' motion to dismiss is GRANTED.[1]

## II.  BACKGROUND

Plaintiff Nelly Allen, originally from Russia, sought and received asylum in the United States in 2005; she obtained permanent resident status in 2006.  Compl. (dkt. 1) ¶¶ 6, 7.  She

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

*United States District Court*
*Northern District of California*

applied for naturalization on July 1, 2011, and an immigration officer interviewed her on January 3, 2012. *Id.* ¶¶ 8, 9. USCIS determined that in September 2012, police arrested Plaintiff in Marin County for DUI. Shpolyanskaya Decl. (dkt. 37-1) Ex. A at 1. In March of 2013, before USCIS decided Plaintiff's first application, it issued her a "Request for Evidence" regarding the DUI arrest; Plaintiff had until April 27, 2013, to respond. *Id.* ¶ 5. Plaintiff responded to the request on April 24, 2013, and USCIS denied her first application on May 1, 2013, erroneously referencing an arrest date in October 2012 in a different county. *Id.* ¶ 6, Ex. B at 2. Plaintiff filed a request for a hearing regarding the denial decision. *Id.* ¶ 7. She attended the hearing on July 2, 2013, testifying that her criminal hearing for her September, not October, DUI had been rescheduled to August 2013. *Id.* ¶ 8. USCIS acknowledged its error and issued another evidence request, giving Plaintiff until October 18, 2013, to respond to and provide the requested court documents related to the hearing. *Id.* ¶ 9 & Ex. B at 2. She provided USCIS with nothing. *Id.* Ex. B at 3. On March 21, 2014, USCIS reaffirmed its decision to deny Plaintiff's first naturalization application because plaintiff "continued to fail to prosecute [the] application," issuing a "final administrative denial" that Plaintiff could request judicial review of in federal district court. *Id.*

Plaintiff did not seek judicial review of the denial, but she did file a second naturalization application in March 2017, and a third in March 2020 while the second remained pending. *Id.* ¶¶ 11, 12.

Plaintiff brought this action in December 2021, filing a complaint seeking mandamus "to compel Defendants and those acting under them to take action on a Form N-400, the Application of Naturalization . . . in order for Plaintiff to become a Naturalized Citizen of the United States." Compl. ¶ 2. The complaint alleges that Defendants "willfully and unreasonably . . . delayed . . . and . . . refused to adjudicate" Plaintiff's applications and that she has "exhausted any administrative remedies." *Id.* at 4 (claims and prayer for relief). Her complaint asserts that her June 2011 and March 2017 applications were pending at the time of its filing (although the former had actually been denied several years earlier). *See id.* ¶ 10. It does not mention her March 2020 application, which Plaintiff's belated opposition brief asserts was filed by someone else acting without her authorization. *See* Opp'n at 4–5. Plaintiff asks the Court to assume jurisdiction under

United States District Court
Northern District of California

2

8 U.S.C. § 1447(b) and either adjudicate the application here or compel Defendants to do so. Compl. at 4 (prayer for relief).

In May 2022, the parties stipulated to, and the Court granted, a stay of the proceedings for a limited time so the parties could "pursu[e] an administrative resolution that may render further litigation of this case unnecessary." Dkt. 17 at 1.  On June 1, 2022, USCIS interviewed Plaintiff regarding her two pending naturalization applications.  Shpolyanskaya Decl. ¶ 13.  On June 28, 2022, USCIS issued Plaintiff a notice of its intent to deny her two pending applications because she "failed to establish that she has been a person of good moral character during the statutorily prescribed period."[2] *Id.* at ¶ 14 & Ex. D at 1.  USCIS largely based its decision on the findings of the California Superior Court for San Francisco County that determined Plaintiff engaged in the unauthorized practice of law, in that she had never been an active member of the California State Bar or authorized to practice in California but nevertheless held herself out as an attorney and collected fees from clients based on this misrepresentation.  *Id.* Ex. D at 3, 4.  The notice of intent stated that Plaintiff could respond within thirty days to rebut the findings or provide additional evidence, and USCIS's policies related to COVID-19 provided her an additional sixty-day extension of that deadline.  *Id.* ¶ 14 & Ex. D at 6.

In August 2022, the Court granted another stay at the request of the parties so that Plaintiff could respond to the notice and so USCIS could review the response and issue a decision.  *See* Dkt. 20.  Plaintiff ultimately submitted a "voluminous" list of documentary evidence outside the ninety-day window on October 11, 2022, that USCIS still acknowledged and considered in making its final decision.  Shpolyanskaya Decl. Ex. F at 7.

On November 9, 2022, USCIS denied Plaintiff's two pending applications.  *Id.* ¶ 16. USCIS determined that Plaintiff failed to meet the naturalization moral character requirement because she engaged in the unauthorized practice of law, specifically practicing immigration

---

[2] An applicant for naturalization must demonstrate good moral character for at least five years before the application filing date, and during the period leading up to the oath of allegiance. *See* 8 U.S.C. §§ 1427(a), (e).  The applicant bears the burden of establishing that she meets all the requirements of naturalization, including the requirement for good moral character.  8 C.F.R. 316.2(b).

United States District Court
Northern District of California

without a license "even after repeated warnings from USCIS," and her misrepresentation "led to real harm" for her clients' cases. *Id*. Ex. F at 7, 9. USCIS explained that "a majority of the evidence" Plaintiff submitted in response to USCIS's concerns did "not address [her] unlawful acts of practicing law without a license." *Id*. Ex. F at 2, 7. USCIS held:

> Given the harm suffered by your former clients due to your unauthorized practice of law, your persistent refusal to even acknowledge your unauthorized practice of law, and your minimal evidence of counterbalancing factors, USCIS concludes that you have not met your burden to establish good moral character.

*Id*. Ex. F at 12. Plaintiff had a thirty-day window in which to submit a request for a hearing on the naturalization decision; without a request, the decision would become final. *Id*. Ex. F at 12–13. The record does not indicate that Plaintiff filed a request for a hearing.

Following the November USCIS decision, the Court placed the case back on its active docket, and Defendants moved to dismiss for lack of subject matter jurisdiction on December 28, 2022, contending that, in light of the denied applications, Plaintiff's complaint became moot. *See* dkts. 23, 29. Plaintiff did not respond. Defendants filed a reply in support of their motion to dismiss. *See* dkt. 32. Five days after the reply deadline, both parties stipulated to a withdrawal of Defendants' motion to dismiss to allow for Defendants to file an amended motion and for Plaintiff to respond. *See* dkt. 34. The Court granted this stipulation. *See* dkt. 35.

Defendants filed an amended motion to dismiss on January 23, 2023, raising arguments similar to their original motion. Am. Mot. (dkt. 37). Once again, plaintiff did not respond. Defendants filed a reply in support of their amended motion. *See* dkt. 40. On the day Defendants filed their reply, Plaintiff reached out to them and requested another opportunity to respond. *See* dkt. 42 at 2. For a second time, the parties stipulated to an extension, and Defendants requested a withdrawal of their reply brief. *See* dkt. 42. The Court granted the stipulation and stated that no further extensions would be granted. *See* dkt. 44. The new deadline for Plaintiff's opposition was February 24, 2023. *Id*.

Plaintiff filed a late brief on February 27. Opp'n (dkt. 45). She asserts that her 2013 application was denied without cause and is subject to de novo review under 8 U.S.C. § 1421(c). *Id*. at 3–4. She argues that USCIS unduly delayed scheduling an interview for her 2017

4

1   application and that the issue of delay is not moot because it is capable of repetition yet evading

2   review.  *Id.* at 4–6.  She also argues that the June 2022 interview did not "prove[] that Plaintiff

3   failed to establish that she is a person of good moral character."  *Id.* at 5.

4         Despite the Court's previous admonishment that it would not grant further extensions, the

5   parties filed a stipulation on the day Defendants' reply was due for an extension of one day

6   because defense counsel had a brief due in another case the same day.  *See* dkt. 47.  Defendants

7   filed a reply brief on March 7, 2023, arguing that Plaintiff's complaint does not seek de novo

8   review of any denial, that leave to amend to assert such a claim would be futile because Plaintiff

9   has not exhausted administrative remedies and the statute of limitations has expired with respect to

10   her earliest application, and that her claim regarding delay does not fall within any exception to

11   mootness.  *See generally* Reply (dkt. 49).

12         In an abundance of caution, the Court considers Plaintiff's late-filed opposition and

13   GRANTS the parties' stipulation to allow Defendants' reply.

14   **III.     ANALYSIS**

15       **A.     Legal Standards for Rule 12(b)(1)**

16         A Rule 12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction to hear

17   the claims at issue.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited

18   jurisdiction," and may only hear cases falling within that jurisdiction.  *Kokkonen v. Guardian Life*

19   *Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Subject matter jurisdiction can never be forfeited or

20   waived and federal courts have a continuing independent obligation to determine whether subject-

21   matter jurisdiction exists."  *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975

22   n.12 (9th Cir. 2012) (cleaned up).

23         An attack on subject matter jurisdiction under Rule 12(b)(1) may be facial or factual.

24   *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).  In a facial attack, "the challenger

25   asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

26   jurisdiction," but in a factual attack, "the challenger disputes the truth of the allegations that, by

27   themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373

28   F.3d 1035, 1039 (9th Cir. 2004).  In a factual attack specifically, "the district court is not confined

by the facts contained in the four corners of the complaint," "need not presume the truthfulness of the plaintiff['s] allegations," and may look beyond the pleadings. *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Edison*, 822 F.3d at 517. Once the moving party has provided "affidavits or any other evidence" supporting its motion, the burden shifts to the opposing party to present its own "affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (cleaned up).

### B.    Legal Standard for Article III Standing and Mootness

A plaintiff's standing under Article III of the United States Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "To satisfy Article III, a plaintiff must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (cleaned up). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Id.*

A federal court loses jurisdiction and a pending case becomes moot if a plaintiff no longer has Article III standing. The plaintiff bears the burden, "as the party invoking federal jurisdiction," to establish the elements of standing "through all stages of federal judicial proceedings" because "it is not enough that a dispute was very much alive when suit was filed." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Without an extant controversy through all stages of review, a case will become moot because "[p]roceedings not of a justiciable character are outside the contemplation of the constitutional grant." *Massachusetts v. Mellon*, 262 U.S. 447, 480 (1923).

### C.    Plaintiff's Claims Are Moot

The Mandamus Act vests district courts with "original jurisdiction of any action in the

United States District Court
Northern District of California

1   nature of mandamus to compel an officer or employee of the United States or any agency thereof

2   to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Here, Plaintiff filed her complaint "to

3   compel Defendants and those acting under them to take action on [Plaintiff's] Form N-400,"

4   alleging "Defendants have willfully and unreasonably" delayed in adjudicating the applications,

5   and further alleging Plaintiff waited over ten years to hear back from USCIS about her first

6   naturalization application filed in 2011. Compl. ¶ 2 & p. 4. The latter contention was false even

7   when filed: records indicate that USCIS adjudicated and denied Plaintiff's first application in

8   March 2014, as Plaintiff acknowledges in her opposition brief. *See* Shpolyanskaya Decl. ¶ 10 &

9   *generally* Ex. B; Opp'n at 3. Furthermore, it is undisputed that USCIS adjudicated Plaintiff's

10  second and third naturalization applications, denying them on November 9, 2022. Defendants

11  moved to dismiss the complaint, arguing that the case is moot because USCIS has now

12  adjudicated Plaintiff's pending N-400 applications. The Court agrees. USCIS did exactly as

13  Plaintiff asked, ruling on her pending naturalization applications. *See generally* Shpolyanskaya

14  Decl. at Exs. E, F. Because Plaintiff bears the burden of establishing Article III standing at all

15  stages of judicial proceedings, and the Court finds that she has failed to do so, this case is moot.

16      Plaintiff argues that her petition is not moot and falls under the "capable of repetition yet

17  evading review" exception. Opp'n at 4. She refers to her past applications and USCIS's allegedly

18  slow response time. *Id*. Plaintiff contends, without citing any authority in support, that she has

19  "clearly established a reasonable expectation that she will be subjected to the same action again in

20  the future," and the Court should not dismiss her complaint. *Id*. at 6.

21      A case is capable of repetition yet evading review, and thus exempt from the usual rule of

22  mootness, if: (1) the challenged action is too short in duration to be fully litigated prior to its

23  expiration; *and* (2) there is a reasonable expectation or demonstrated probability that the same

24  complaining party would be subjected to the same action again. *See Spencer v. Kemna*, 523 U.S.

25  1, 17–18 (1998). Here, Plaintiff's case satisfies neither element of the test.

26      The first element fails because Plaintiff has not shown that she could not obtain mandamus

27  relief before any future naturalization application that might be delayed is resolved. In this case,

28  Plaintiff filed her complaint about the alleged delay and then both parties stipulated to stay the

7

case to allow USCIS to adjudicate her applications.  Plaintiff might well have been able to obtain

relief in this Court before USCIS acted (assuming for the sake of argument that she was entitled to

relief) if she had not agreed to delay proceedings.  Of course, her decision to do so was entirely

reasonable, given that USCIS agreed to provide the outcome she sought—adjudication of her

applications.  But the fact that Plaintiff successfully obtained that outcome through informal

means does not indicate that in the hypothetical case of a future delayed application, a future court

proceeding would be fruitless.  *See Sadiku v. Dep't of Homeland Sec.*, No. 20-CV-3241 (RPK),

2022 WL 173109, at *2 (E.D.N.Y. Jan. 18, 2022) ("There is some irony in Sadiku's claim that

USCIS adjudicated his claim too quickly for him to litigate his complaint that USCIS was

adjudicating that claim too slowly.").

As to the second element, while Plaintiff may indeed file another application for

naturalization, she has shown no pattern of consistent delay that suggests any likely repetition of

purported misconduct:  Plaintiff's first application was adjudicated in less than three years, her

second in five and a half, and her third in less than three.  Plaintiff provides no average timeframe

for decisions, and the Court notes that an applicant's own actions (e.g., not responding to requests

for evidence or filing rebuttals late) may prolong the adjudication process, in addition to outside

forces, such as COVID-19 or an influx of immigrants from a country in crisis.  A subsequent

application that fails to cure bars to naturalization previously identified by USCIS might also be

adjudicated more quickly.  Plaintiff has not shown that USCIS will impermissibly delay

adjudicating any further applications she might file.  If it does, she may seek relief in court.

At the genesis of the suit, Plaintiff met Article III standing and, potentially, had an injury

that could be addressed by the Court.  *See Lewis*, 494 U.S. at 477.  Nevertheless, once USCIS

adjudicated Plaintiff's claims on November 9, 2022, and Plaintiff did not appeal the final decision

within the thirty-day timeframe, that decision became final.  *See* Shpolyanskaya Decl. Ex. F at 13

("Without a properly filed Form N-336, this decision will become final.").  The record indicates

no filing of an appeal, and thirty days came and went before Defendants moved to dismiss.  Thus,

Plaintiff received what her complaint requested when USCIS made its decision, and she no longer

suffers the injury she complained of.  Therefore, her case became moot and "must be dismissed for

lack of jurisdiction." *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir. 1999).

A mandamus action to compel a naturalization decision is neither the time nor the place for a district court to review a denial of Plaintiff's naturalization application.  If Plaintiff desires judicial review of USCIS's decisions, she must follow the steps prescribed in statutes governing the naturalization process.  *United States v. Hovsepian*, 359 F.3d 1144, 1162 n.15 (9th Cir. 2004) ("Unsuccessful [naturalization] applicants must first take an administrative appeal of the denial and complete [USCIS's] administrative process before seeking judicial review.  8 U.S.C. § 1421(c), (d); 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2.").  The Court does not reach Plaintiff's arguments regarding the merits of USCIS's decisions denying her applications, and this order is without prejudice to any separate administrative or judicial action that Plaintiff might pursue to challenge those decisions.

## IV.     CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss under Rule 12(b)(1) is GRANTED.  The action seeking resolution of applications that have now been adjudicated is DISMISSED for lack of jurisdiction, without leave to amend but without prejudice to Plaintiff pursuing administrative relief or a separate judicial action to challenge USCIS's substantive decision.  The Clerk of the Court is directed to close this matter.

**IT IS SO ORDERED.**

Dated:  March 10, 2023

_____
JOSEPH C. SPERO
Chief Magistrate Judge